IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

REBECCA MARTINEZ,

       Plaintiff,

vs.                                              Civ. No. 12-660 KG/WPL

SOUTHWEST CHEESE COMPANY, L.L.C.,

       Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

       This matter comes before the Court upon Defendant Southwest Cheese Company's Motion to Strike Affidavits (Motion to Strike), filed on April 2, 2013.  (Doc. 60).  Plaintiff filed a response on April 16, 2013, and Defendant Southwest Cheese Company, L.L.C. (SWC) filed a reply on April 30, 2013.  (Docs. 63 and 69).  Having considered the Motion to Strike and the accompanying briefs, the Court grants the Motion to Strike, in part, for the reasons provided below.

*A.  Background*

       This is a discrimination and sexual harassment case brought by Plaintiff against her former employer, SWC.  On March 5, 2013, SWC filed Defendant Southwest Cheese Company's Motion for Summary Judgment (Motion for Summary Judgment).  (Doc. 38).  Plaintiff filed her response to the Motion for Summary Judgment on March 19, 2013.  (Doc. 43).  Plaintiff attached numerous exhibits to her response, including her own affidavit and affidavits by former SWC employees, Misty English and Felipe Alvarado.  SWC filed its reply for the Motion for Summary Judgment on April 2, 2013, the same day SWC filed this Motion to Strike.  *See* (Docs. 59 and 60).

*B.  Discussion*

SWC moves to strike Plaintiff's affidavit in its entirety as well as the affidavits of English and Alvarado.  *See* (Docs. 43-1, 43-2, and 43-3).  In the alternative, SWC moves to strike the following:

   1.  paragraphs 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 16, 18, 19, 20, 21, 22, 23, 24, 26, 28, and 29 of Plaintiff's affidavit;[1]

   2.  paragraphs 2, 3, and 4 of English's affidavit; and

   3.  paragraphs 5, 6, 7, 8, and 9 of Alvarado's affidavit.

In the interest of justice and considering the affidavits at issue, the Court is not inclined to strike any of the affidavits in their entirety.  Instead, the Court will address each paragraph at issue to determine its sufficiency and admissibility.[2]

   *1.  Plaintiff's Affidavit*

SWC moves to strike numerous statements in Plaintiff's affidavit because SWC believes that those statements are attempts by Plaintiff to create sham issues of fact and/or because Plaintiff does not have personal knowledge regarding those statements.  *See* Fed. R. Civ. P. 56(c)(4) (affidavit opposing a motion for summary judgment "must be made on personal knowledge….").

---

[1] Although SWC lists paragraph 8 as a paragraph it wishes to strike, SWC does not argue that the Court should strike paragraph 8.  (Doc. 60) at 15. Consequently, the Court will exclude paragraph 8 from its discussion.

[2] SWC does not necessarily move to strike entire paragraphs.  When SWC moves to strike only a particular statement in a paragraph, the Court will refer only to that statement.

> *a. Attempts to Create Sham Issues of Fact:  Paragraphs 4, 5, 9, 10, 11, 12, 13, 14, 16, 18, 23, 24, 28, and 29*

SWC claims that Plaintiff's affidavit creates sham issues of fact by directly contradicting her deposition testimony and by improperly supplementing her lawsuit.  It is well-established that the mere fact that an affidavit conflicts with prior sworn testimony is insufficient for a court to disregard that affidavit.  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001).  Nonetheless, a court can disregard an affidavit which conflicts with deposition testimony if the affidavit creates a sham issue of fact.  *Id.*  The courts look to three factors in determining whether a contradicting affidavit creates a sham fact issue:  whether "'(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain.'"  *Id.* (quoting *Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir. 1995)).

In addition to a direct conflict between an affidavit and prior deposition testimony, an indirect conflict between an affidavit and prior deposition testimony can create a sham issue of fact.  *See Sumpter v. Ahlbrecht*, 2012 WL 252980 *5 (D. Colo.) ("under Tenth Circuit law, a contradiction between an affidavit and prior sworn statements need not be direct to justify disregarding the affidavit.").  For instance, an affidavit that provides information which the deponent claims she could not recall at her earlier deposition can create a sham issue of fact.  *See Juarez v. Utah*, 263 Fed. Appx. 726, 734-35 (10th Cir. 2008).  Moreover, an affidavit which raises new issues not presented during a deposition can create a sham issue of fact.  *See Simon v. Birraporetti's Restaurants, Inc.*, 720 F.Supp. 85, 89 (S.D. Tex. 1989) (citing *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2nd Cir. 1969)).

> *(1)  Direct Conflict between Plaintiff's Affidavit and Her Deposition Testimony*

SWC contends that the following statements in paragraph 9 directly conflict with

Plaintiff's deposition testimony:

> After my complaint and 'meeting' with Mr. Chappell and Mr. Williamson, Mr. Donnie Romero continued to grope and grab females in my presence. … I saw Donnie Romero on a frequent and continuous basis (almost daily) grab female employees [sic] buttocks, and breasts; hug female employees from behind; spank female employees [sic] buttocks; attempt to kiss female employees.

Plaintiff testified at her deposition that she did not see Romero actually touch any other female

employee after she filed her complaint with SWC in 2008:

> Q      You had indicated that Donnie Romero—did you see him actually touch other female employees after he touched you?
>
> A      After he touched me?  No, after I filed my complaint, no, I never saw him,---

(Doc. 60-1) at 2, Depo. at 181.  Plaintiff, however, further testified that she saw Romero grab

Carrie Nelson's buttocks in 2009, after Plaintiff filed her complaint with SWC.  (Doc. 63-1) at 8,

Depo. at 182.  Plaintiff  also testified that she saw Romero grab two female employees' breasts

about the same time Romero had grabbed her buttocks in 2009 and about the same time Plaintiff

saw Romero grab Nelson's buttocks in 2009.  (Doc. 63-1) at 8, Depo. at 182-83.  Moreover,

Plaintiff testified that she saw Romero grabbing two female employees sometime after she filed

her complaint with SWC.  (Doc. 63-1) at 4, Depo. at 137-39.

SWC notes that Plaintiff previously alleged in her complaint that Romero grabbed her

buttocks prior to her filing a complaint with SWC in 2008.  *See* (Doc. 1-1) at ¶¶ 11-13.  Even if

the Court disregards the testimony that Romero grabbed Plaintiff's buttocks in 2009, there

remains deposition testimony regarding at least five other 2009 instances of inappropriate

behavior by Romero.  That remaining deposition testimony does not directly conflict with

paragraph 9. However, as SWC correctly observes, these five instances of inappropriate

behavior cannot be said to have occurred on an "almost daily" basis. Hence, the Court strikes

only that portion of paragraph 9 quoted by SWC which characterizes Romero's harassment of

females as occurring on an "almost daily" basis.

*(2) Improperly Raising New Factual Issues in Plaintiff's Affidavit*

Next, SWC argues that Plaintiff's affidavit improperly raises new factual issues in an

effort to sandbag SWC by depriving SWC of an opportunity to conduct discovery on those new

issues. *See Juarez*, 263 Fed.Appx. at 735. SWC has submitted a chart of Plaintiff's affidavit

statements which lists those statements raising new factual issues for the first time in Plaintiff's

affidavit. *See* (Doc. 60-2) at 2-5 (refers to ¶¶ 4, 5, 9, 10, 11, 12, 13, 14, 16, 18, 23, 24, 28, and 29

of Plaintiff's affidavit). SWC contends that Plaintiff had not previously complained about

Romero's offensive comments and jokes as described in the remainder of paragraph 9 nor had

she previously complained about the various wrongs she was allegedly subjected to like

numerous slights by George Chappell and management, working harder and longer on more

assignments than her male counterparts, and Romero and Gilbert Baca making her life more

difficult once she was promoted to Team Leader. SWC also contends that Plaintiff had not

previously complained about the extreme hostile work environment she now describes including

multiple harassers and incidents concerning other employees.

In response to SWC's contentions, Plaintiff refers to her complaint, the Joint Status

Report and Provisional Discovery Plan, and to discovery to show that she alleged the following

facts prior to making her affidavit: (1) she "was informed or learned that Mr. Romero had

several complaints made by others against him;" (2) SWC was aware of at least three other

female employees who complained about Romero's conduct; (3) "[b]ecause she was in fear of

5

losing her job, Plaintiff agreed that Mr. Romero should only be orally reprimanded about this lewd conduct and agree to stop harassing female co-workers;"  (4) "Defendant ha[d] a custom, routine and practice of discriminating against females by disciplining females for infractions that similarly situated males were not disciplined for, and in fact promoted;" (5) "Defendant through its agents or supervisors engaged in a pattern and practice of unlawful sexual discrimination by subjecting Plaintiff to unwelcome sexual harassment;" (6) Plaintiff worked in a hostile work environment; and (7) although Justin Musick was involved in a large loss of cheese, "[h]e was not put on a plan or probation (like Plaintiff), and in fact was rewarded with a promotion as Production Manager."  (Doc. 1-1) at ¶¶ 13, 14, 19, and 22; (Doc. 10) at 6; (Doc. 48-19) at 1; (Doc. 48-20) at 1.

As in *Juarez*, SWC argues that Plaintiff's recent recollection of new incidents in her affidavit constitutes an impermissible attempt to create sham issues of fact.  Moreover, SWC asserts that (1) Plaintiff's counsel cross-examined Plaintiff during her deposition and even conducted a re-direct examination of Plaintiff; (2) the conditions Plaintiff claims she saw and suffered during her employment would not have been newly discovered; and (3) her new statements cannot be seen as an attempt to explain any previous confusion in her earlier deposition testimony.  SWC contends that these new statements are Plaintiff's attempt to meet the standard for a hostile work environment which she could not otherwise do.

The Court agrees with SWC to some extent.  With respect to paragraph 4, SWC argues that Plaintiff raises a new factual issue when she states that SWC turned "a blind eye to any sexual harassment of supervisor's [sic] it deemed important or essential such as Donnie Romero."  The gist of Plaintiff's deposition testimony, however, is that SWC allowed sexual harassment to take place.  Paragraph 4's reference to SWC turning a blind eye to sexual

harassment does not raise a new factual issue and, therefore, does not create a sham issue of fact. The Court, however, will later examine whether Plaintiff has personal knowledge of the specific allegations in paragraph 4.

SWC contends that paragraph 14 also raises a new factual issue when Plaintiff states that it is well known that Cody Stewart exposed himself to female employees.  However, Plaintiff actually testified at her deposition that she was aware of Stewart exposing himself.  *See* (Doc. 63-1) at 6, Depo. at 175-76.  Without a conflict between paragraph 14 and Plaintiff's deposition testimony, the Court cannot conclude that paragraph 14 creates a sham issue of fact.  As with paragraph 4, the Court will later address whether Plaintiff has personal knowledge of the information in paragraph 14.

Plaintiff, on the other hand, fails to convince the Court that she previously raised the specific offensive comments and jokes attributed to Romero in paragraph 9 nor does Plaintiff provide any explanation for raising those specific instances at this late date.  The Court, however, acknowledges that SWC knew of at least three complaints to SWC from female employees about Romero's behavior.  The Court will, of course, examine those complaints in deciding the Motion for Summary Judgment.  The Court will also consider Plaintiff's deposition testimony regarding Romero's behavior toward female employees.  The statements describing offensive comments and jokes in Paragraph 9, however, are attempts to present sham issues of fact.  Consequently, the Court strikes those statements.

Second, Plaintiff does not dispute that her affidavit contains statements raising new factual allegations like the numerous slights by Chappell and management; her working harder and longer on more assignments than her male counterparts; male employees and another female employee making more money than Plaintiff; Plaintiff having to apply four times before being

7

promoted while male employees were promoted on their first attempt; promotion of a male employee who went to the same church as Chappell; male employees not being disciplined although they were either drunk at work or had beer at work; males, other than Musick, who were not disciplined for losing vats of cheese; and Romero and Baca making her life more difficult once she was promoted to Team Leader.  *See* ¶¶ 5, 10, 18, 23, 24, and 28 of Plaintiff's affidavit.  Plaintiff further does not dispute that the following specific averments in her affidavit are new:  harassment by Baca; inappropriate use of email to send offensive material; inappropriate banter in the break room which would, at times, keep female employees from entering the room; and Plaintiff resigning once she knew SWC rehired Romero.  *See* ¶¶ 11, 12, 13, 16, and 29.  Once more, Plaintiff fails to convince the Court that these new factual allegations should be allowed.  These new allegations are simply an impermissible attempt to present sham issues of fact.  Consequently, the Court strikes those allegations from paragraphs 5, 10, 11, 12, 13, 16, 18, 23, 24, 28 and 29 of Plaintiff's affidavit.

> *b.  Plaintiff's Personal Knowledge:  Paragraphs 4, 7, 14, 19, 20, 21,22, and 26*

The Court will now address the remaining paragraphs of Plaintiff's affidavit which SWC contends should be stricken for lack of personal knowledge. [3]  As an initial matter, Plaintiff argues that since she swore in her affidavit that she bases the facts in the affidavit on personal knowledge she generally has personal knowledge of all of the statements in her affidavit.  (Doc. 43-1) at 1.  SWC argues that Plaintiff must, nonetheless, provide a factual basis or foundation for her general assertion of personal knowledge.  SWC further argues that Plaintiff cannot rely on her general assertion of personal knowledge to support her affidavit descriptions of disciplinary

---

[3] Plaintiff generally seems to argue that she is a competent witness.  The question here, however, is not whether she is a competent witness, but rather whether she has the requisite personal knowledge to make various statements in her affidavit.

actions against other employees when Plaintiff actually testified at her deposition that she has no basis to know how SWC disciplined its other employees.  *See* (Doc. 60-1) at 4, Depo. at 193.

Plaintiff contends that she need not set forth the factual basis for her general assertion of personal knowledge, citing Federal Rule of Evidence 602 and *Taylor v. Principi*, 141 Fed. Appx. 705, 707 (10th Cir. 2005).  Plaintiff, however, misplaces her reliance on Rule 602 and *Taylor*.  Rule 602 states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  In other words, "a statement that a witness knows something, without statements about *how* the witness knows that something, is not admissible."  *Owens-Floyd v. City of Chicago*, 2007 WL 4365324 *1 n.1 (N.D. Ill. 2007) (citing *Ward v. First Federal Savings Bank,* 173 F.3d 611, 618 (7th Cir.1999); *Drake v. 3M,* 134 F.3d 878, 887 (7th Cir.1998)).  "[S]tatements of mere belief" in an affidavit must be disregarded.  *Tavery v. United States,* 32 F.3d 1423, 1427 n. 4 (10th Cir.1994).  Moreover, *Taylor* is distinguishable from this case.  In *Taylor*, the issue was whether the affiant must swear that the affidavit was made on personal knowledge if it is clear that the affiant based his or her statements on personal knowledge.  *Taylor*, 141 Fed. Appx. at 707.  In this case, the issue is whether Plaintiff must support her general assertion of personal knowledge with a factual basis.  Considering Plaintiff's lack of a factual basis for her statements regarding other employees' disciplinary actions and her own contrary deposition testimony, the Court cannot determine that Plaintiff has actual personal knowledge of SWC's disciplinary actions against other employees.

Nevertheless, Plaintiff also argues that her position as a Team Leader and her personal knowledge of the employees at issue provide a context from which the Court can infer that she has personal knowledge concerning whether SWC disciplined those other employees.  *See Roberts v. Cessna Aircraft Co.*, 289 Fed. Appx. 321, 324 (10th Cir. 2008) (affiant's personal

knowledge may be inferred from affidavit's context); *American Management Services, LLC v. Department of the Army*, 842 F.Supp.2d 859, 867 (E.D. Va. 2012) (affiant's personal knowledge may be inferred from affiant's employment position and responsibilities as well as other contextual factors).  Plaintiff, however, fails to include any further information in her affidavit to actually provide a context wherein the Court could infer that Plaintiff would have been in a position to personally know whether SWC disciplined other employees.

In sum, Plaintiff cannot rely, without more, on her general assertion of personal knowledge.  Furthermore, Plaintiff cannot rely on actual or inferred personal knowledge of disciplinary actions taken against other employees.  Taking into account the above determinations, the Court will now address the remaining paragraphs of Plaintiff's affidavit to determine whether they are based on Plaintiff's personal knowledge and, therefore, are admissible.

> Paragraph 4:  "For instance, in 2007 two female employees were terminated on the [sic] immediately the same day for 'horse play' in the woman's locker room.  Yet, Eric Denton (a production manager), and Paul Conrow (a Team Leader) had a fist fight on the production floor and were not terminated or disciplined in any way."

Plaintiff does not contend that she personally saw the female employees horse playing nor does Plaintiff explain how she knows that SWC terminated the female employees for horse playing.  On the other hand, Plaintiff testified at her deposition that she personally saw the fight between Denton and Conrow, and that Conrow told her that he and Denton later shook hands "and that was the end of it." (Doc. 63-1) at 5, Depo. at 147.  Conrow's statement to Plaintiff, however, is hearsay and Plaintiff has failed to argue that a hearsay exception somehow applies to that statement.  *See* Rule 56(c)(4) (affidavit opposing motion for summary judgment must "set out facts that would be admissible in evidence….").  Consequently, the Court strikes the

statements in paragraph 4 referring to the female employees horse playing, termination of those female employees, and SWC's failure to discipline Denton and Conrow for fighting.

> Paragraph 7:  "I have reviewed the entire employee file for Donnie Romero provided to me by Southwest Cheese, L.L.C. during discovery in this matter.  Nowhere in his employment file is there any mention of him being placed on five days unpaid suspension, or receiving any type of discipline regarding my complaint."

Plaintiff argues that since she reviewed Romero's personnel file she has personal knowledge of the file and its contents, including its lack of evidence that SWC disciplined Romero for his actions regarding Plaintiff.  The Court agrees with Plaintiff.  Of course, the Court will also review Romero's personnel file in deciding the Motion for Summary Judgment and give proper weight to any absence of a disciplinary action.  The Court will not strike the statements in paragraph 7 referring to Plaintiff's review of Romero's personnel file.

> Paragraph 14:  "It was well known in the Southwest Cheese plant that Cody Stewart had a habit of exposing his genitals to female employees."

SWC argues that Plaintiff provides no basis for this statement and that it is presumably inadmissible hearsay.  In fact, Plaintiff admitted in her deposition testimony that she learned of Stewart exposing himself to SWC employees through hearsay.  (Doc. 63-1) at 6, Depo. at 176. Plaintiff summarily argues that her statement is, nonetheless, admissible under Rule 803(1) (present sense impression), 803(2) (excited utterance), and/or 803(3) (then-existing mental, emotional, or physical condition).  Without any additional information, the Court is not in a position to conclude that Plaintiff's statement in paragraph 14 is admissible under Rule 803.

Plaintiff also argues that she is not offering her statement for the truth of the matter asserted and that paragraph 14 is, therefore, not hearsay.  Instead, Plaintiff offers paragraph 14 to demonstrate the effect of statements about Stewart's behavior on Plaintiff, which "is important in determining whether there was [a] severely and pervasive sexually hostile work environment."

11

(Doc. 63) at 10-11.  To show a sexually hostile work environment, the trier of fact examines the totality of the circumstances, i.e., the record as a whole, including the context of alleged instances of sexual harassment.  *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999).  Moreover, the severity and pervasiveness of an alleged hostile work environment are judged from both an objective and subjective viewpoint.  *Id.* at 1097. Consequently, the effect on Plaintiff of statements about Stewart exposing himself are relevant to the context of Plaintiff's allegations of a hostile work environment as well as to Plaintiff's subjective perception of her work environment.  *See Hirase-Doi v. U.S. West Comm., Inc.*, 61 F.3d 777, 782 (10th Cir. 1995) (to rely on allegations of misconduct directed toward other employees, plaintiff must show that she was aware of that misconduct at the time).  The Court will not strike the paragraph 14 statement referring to Stewart exposing himself to SWC female employees.

Paragraph 19:  "[M]ale Team leaders that [sic] 'failed to properly communicate with the maintenance crew' were not disciplined."

Plaintiff argues that her reference to the male Team Leaders is gleaned from her review of SWC business records which are admissible under Federal Rule of Evidence 803(6) as an exception to the hearsay rule.  Plaintiff's reference, however, is not a business record and, therefore, Rule 803(6) does not apply.  Moreover, as determined above, Plaintiff has no actual or inferred personal knowledge of SWC's disciplinary actions concerning other employees.  The Court strikes the statement in paragraph 19 referring to SWC's failure to discipline male Team Leaders.

Paragraph 20:  "Male team leaders who [failed to sign off on an environmental log sheet] were not written up including Paul Conrow, Justin Musick, Donnie Romero, Danny Garcia, and Brian Fernandez.  In fact, male Team Leaders signed off for each other and sign[ed] the [sic] each others [sic] initials to these documents but were not disciplined or reprimanded in any way."

SWC asserts that Plaintiff specifically testified at her deposition that she did not have any personal knowledge of disciplinary actions concerning Musick and that what she knew about SWC's failure to discipline Musick was "hearsay."  *See* (Doc. 60-1) at 3-4, Depo. at 192-93. Plaintiff contends that the following exceptions to the hearsay rule apply:  Federal Rules of Evidence 801(2) (admission by party opponent), 803(1) (present sense impression), 803(2) (excited utterance), 803(3) (then-existing mental, emotional, or physical condition), 803(6) (business record), and 807 (residual exception).  Plaintiff, however, fails to provide essential information about the context of the hearsay to enable the Court to determine whether any of those exceptions apply.  Without more information, the Court must conclude that the "hearsay" concerning SWC's failure to discipline Musick is inadmissible.

In addition, SWC notes that Plaintiff specifically testified at her deposition that she did not personally have knowledge whether SWC disciplined Conrow or Fernandez for failing to sign off on the environmental log sheet.  (Doc. 60-1) at 5-6, Depo. at 194-95.  Plaintiff appears to argue that she saw male Team Leaders sign off for each other.  However, Plaintiff does not contend that she had personal knowledge regarding whether SWC disciplined those Team Leaders for signing off for each other.  Hence, the Court strikes the statements in paragraph 20 which refer to SWC not disciplining or reprimanding male Team Leaders for signing off for each other on the environmental log sheet.

Paragraph 21:  In August 2010, Denton "instructed the Maintenance crew to blow out the tower with air and water which resulted in massive damages to the equipment.  Mr. Denton was not placed on a Performance Improvement Plan. … Nobody else was placed on any 'PIP.'"

Although Plaintiff may have personally witnessed the August 2010 incident, as determined previously, Plaintiff has neither actual nor inferred personal knowledge of SWC

employees' disciplinary actions.  Consequently, the Court strikes the statements in paragraph 21 referring to SWC's failure to place Eric Denton or anyone else on a PIP for the August 2010 incident.

> Paragraph 21:  "Mr. Denton is married to Michelle who is a very important person to the owners of Glambia."

SWC argues that since Plaintiff does not provide any factual support for this statement it must be impermissible hearsay.   Plaintiff asserts that she does not have to show a factual basis for the statement and that it is admissible under Rules 803(1) (present sense impression), 803(2) (excited utterance), 803(3) (then-existing mental, emotional, or physical condition), 803(6) (business record), and 803(19) (reputation); and Rule 807 (residual exception).   As before, the Court rejects Plaintiff's assertion that she does not have to show a factual basis for her statement. In addition, Plaintiff again fails to provide the Court with any information with which the Court can determine if any hearsay exception applies.  The Court strikes the statement in paragraph 21 which contends that Michelle Denton is very important to the owners of Glambia.

> Paragraph 22:  A massive loss of cheese "was a result of Justin Musick's negligence not due to a mechanical failure.  Yet, Mr. Justin Musick did not receive any disciplinary action."

As in paragraph 20, the Court rejects Plaintiff's attempt to argue that hearsay pertaining to SWC's failure to discipline Musick is admissible under an exception to the hearsay rule. Moreover, Plaintiff's apparent contention that she personally observed the massive loss of cheese does not support a determination that she has personal knowledge that SWC did not discipline Musick for that loss of cheese.  The Court strikes the statement in paragraph 22 referring to SWC's failure to discipline Musick for a massive loss of cheese.

> Paragraph 26:  "I was not responsible for the mechanical failure in August, 2010, and Eric Denton who damaged the equipment was not reprimanded."

Even if Plaintiff saw the mechanical failure and who damaged the equipment, as already indicated above, she has neither the actual nor inferred personal knowledge of whether SWC disciplined Denton for the August 2010 incident. The Court, therefore, strikes the paragraph 26 reference to SWC's failure to discipline Denton for the August 2010 incident.

   *2. English's Affidavit: Paragraphs 2, 3, and 4*

SWC moves to strike English's affidavit which consists of three substantive paragraphs, paragraphs 2-4. In paragraph 2, English describes an incident in which Romero sexually harassed her. In paragraph 3, English states that she complained about Romero and, as a result of the complaint, SWC "moved" Romero," but he received no other discipline. In paragraph 4, English describes an incident when Stewart made an offensive remark to her.

SWC argues that paragraphs 2 and 4 are irrelevant to whether Romero or Stewart harassed Plaintiff or whether Plaintiff witnessed the harassment. SWC specifically asserts that Plaintiff's claim of a hostile work environment is personal to her and, thus, cannot be based on harassment of English. However, as noted above, the severity and pervasiveness of an alleged hostile work environment is judged from both an objective and subjective viewpoint. Here, Plaintiff testified at her deposition that she was aware that English knew of Romero's offensive behavior. *See* (Doc. 63-1) 2, Depo. at 75-76. Plaintiff's awareness of English's knowledge of Romero's conduct is relevant to Plaintiff's own subjective perception of a hostile work environment. *See Hirase-Doi*, 61 F.3d at 782 (awareness of conduct directed to other employees relevant to hostile work environment). English's assertions in paragraph 2 simply confirm her knowledge of Romero's conduct. Plaintiff also contends that she was aware of Stewart exposing himself to female employees. (Doc. 63-1) at 6, Depo. at 175-76. English, however, does assert in paragraph 4 that Stewart exposed himself to her. That paragraph is, therefore, not relevant to

Plaintiff's perception of the work environment.  Consequently, the Court will not strike

paragraph 2 of English's affidavit, but it does strike paragraph 4 of that affidavit.

With respect to paragraph 3, SWC argues that English has no personal knowledge that

Romero's only discipline was to be moved.  Plaintiff makes no effort to oppose that argument.

Consequently, the Court strikes the statement in paragraph 3 referring to Romero's discipline.

*3.  Felipe Alvarado's Affidavit:  Paragraphs 5, 6, 7, 8, and 9*

In paragraph 5, Alvarado describes seeing Romero frequently engaging in inappropriate

behavior.  In paragraph 6, Alvarado states that Romero and Baca made it clear to him that they

thought Plaintiff should not be a Team Leader because it is a male job, and they made Plaintiff's

job as a Team Leader more difficult.  In paragraph 7, Alvarado states that he saw Chance

Senkevick being escorted out of the SWC building because Brenda Miller was afraid of him.  In

paragraph 8, Alvarado notes that based on his personal observations Plaintiff was treated more

harshly due to her gender.  In paragraph 9, Alvarado states that SWC promoted Baca despite him

being drunk on the job and harassing female workers.

SWC contends that the Court should strike paragraphs 6 and 8 because they contain

conclusory statements not supported by facts.  *See Hook v. Regents of University of California*,

394 Fed. Appx. 522, 533 (10th Cir. 2010) ("conclusory statements in affidavits opposing a

motion for summary judgment are not sufficient to raise a genuine issue of material fact.")

(internal quotation marks omitted).  Plaintiff argues, on the other hand, that paragraphs 6 and 8

are not vague and are based on personal knowledge.  Paragraph 6 states that Romero and Baca

"both <u>did a lot of things</u> to make Rebecca Martinez [sic] job as Team Leader more difficult

because of their belief that the position she was in [sic] a 'guy's job' as Team Leader."

(Emphasis added).  Paragraph 8 states that "[b]ased on my own personal observations Rebecca

16

Martinez <u>was treated more harshly</u> in the terms of her employment because of her gender."
(Emphasis added). These are clearly conclusory statements not supported by any facts. Plaintiff
does not cure this deficiency by contending that Alvarado had personal knowledge of these
actions. Simply possessing personal knowledge of these actions does not explain exactly how
Romero and Baca made Plaintiff's job more difficult nor does it explain how Plaintiff was
treated more harshly.

SWC also contends that paragraphs 5, 7, and 9 are not relevant because Alvarado does
not state that Plaintiff knew of the incidents related in those paragraphs. Plaintiff does not
address this argument. Finally, SWC contends that with respect to paragraph 9 Alvarado has no
personal knowledge that Baca received no discipline for his actions nor does Alvarado have
personal knowledge of Baca's promotion. Plaintiff relies, without more, on Alvarado's sworn
statement that his affidavit is based on personal knowledge. As discussed above with regards to
Plaintiff's affidavit, this kind of sworn statement, alone, is insufficient to establish personal
knowledge. In sum, the Court strikes paragraphs 5, 6, 7, 8, and 9 of Alvarado's affidavit.

IT IS ORDERED that

1. Defendant Southwest Cheese Company's Motion to Strike Affidavits (Doc. 60) is
granted in part;

2. as described above, certain statements in paragraphs 5, 9, 10, 11, 12, 13, 16, 18, 23,
24, 28, and 29 of Plaintiff's affidavit are stricken as attempts to create sham issues of fact ;

3. as described above, certain statements in paragraphs 4, 19, 20, 21, 22, and 26 of
Plaintiff's affidavit are stricken for lack of personal knowledge;

4. as described above, the statement in paragraph 3 of Misty English's affidavit which
states that Romero received no other discipline is stricken;

5. paragraph 4 of Misty English's affidavit is stricken; and

6. paragraphs 5, 6, 7, 8, and 9 of Felipe Alvarado's affidavit are stricken.

UNITED STATES DISTRICT JUDGE